United States District Court
Southern District of Texas
**ENTERED**
February 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIC LAMAR GOSS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-02574 |
| § | |
| BUREAU VERITAS NORTH AMERICA, § | |
| INC., *et al.*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM & ORDER**

Pending before the Court is the Motion to Dismiss (Doc. 4) filed by Defendant Bureau Veritas North America, Inc. ("BVNA"), and the Motion Seeking Leave to File a Second Amended Complaint (Doc. 20) filed by Plaintiff Eric Lamar Goss. On February 9, 2022, the Court held a hearing on the Motion Seeking Leave and took it under advisement. Now, for the reasons set out below, the Court **GRANTS** the Motion Seeking Leave **IN PART** and **DENIES** it **IN PART**. Accordingly, the Court also **DENIES** the Motion to Dismiss **AS MOOT**.

**I.    BACKGROUND**

The Equal Employment Opportunity Commission ("EEOC") issued Goss a right-to-sue letter on December 9, 2020. (Doc. 27-1 at 2.) Goss filed his Original Petition against BVNA in Texas state court on December 15, 2020. (Doc. 1-3.) That Petition alleged as follows. From 2016 to 2018, Goss worked for "Bureau Veritas" as a procurement manager. (*Id.* at 3.) He never received his own office and was forced to work in the lobby, even though people hired after him for more junior roles received their own offices. (*Id.*) In late 2018, Goss notified "Bureau Veritas" that the

1

company was violating the Federal Trade Commission Act because of its relationship with "Airgas." (*Id.*) Even though Goss brought that issue to the attention of "Bureau Veritas," the meeting that occurred to address the problem was conducted without Goss. (*Id.*) Goss was later fired. (*Id.*) Goss therefore alleged that he had been illegally terminated in retaliation for "his notification that [the] Airgas-Bureau Veritas Relationship [violated] Federal Trade Commission regulations." (*Id.*) Goss also alleged that "Bureau Veritas" discriminated against him based on race in violation of Texas Labor Code Chapter 21. (*Id.*) Shortly after Goss filed his Original Petition, the legal assistant for Goss's original counsel "attempted to electronically file a request for citation and issuance of service." (Doc. 14-1 at 19.) Apparently, however, the assistant "failed to request the issuance of service." (*Id.*) Consequently, BVNA was not served.

On April 12, 2021, Goss filed his First Amended Original Petition. This amendment added some additional facts, including that Goss had no prior performance issues or reprimands. (Doc. 1-4 at 3.) Along with his amended petition, Goss also filed a new request for service of process. (Doc. 4 at 3.) That request was also defective: the legal assistant "used the wrong address." (Doc. 14-1 at 20.) As a result, BVNA was not served and Goss received a "Want of Prosecution Notice" on June 10, 2021. (Doc. 14 at 11.) Goss then filed another request, asking that service be delivered by a constable to the same, incorrect address. (Doc. 1-6 at 1.) After Goss learned that the address in question was incorrect—preventing service once more—he submitted a corrected request on July 6, 2021. Service was then finally completed on BVNA on July 13, 2021. (Doc. 1-12 at 1.)

BVNA removed the case to federal court on August 9, 2021 and filed a Motion to Dismiss and for Summary Judgment on August 16, 2021. (Doc. 4.) In its Motion, BVNA argued: (1) Goss's claim under Chapter 21 was time-barred; (2) Goss had no private right of action under the Federal

Trade Commission Act; and (3) BVNA was not Goss's employer. (*Id.* at 2–5.) Goss filed a Motion Seeking Leave to File a Second Amended Complaint on December 1, 2021. (Doc. 20.)

Goss's proposed Second Amended Complaint changes the parties and claims at issue. Goss replaces BVNA with Defendants Bureau Veritas Holdings, Inc. ("Holdings"), Bureau Veritas Commodities and Trade, Inc. ("Commodities"), and Inspectorate America Corporation ("Inspectorate"). Goss also replaces his state law claims with federal claims under Title VII and 42 U.S.C. § 1981. In addition, Goss presents the following additional allegations. Goss, who explicitly says that he "identifies as Black," was hired by Inspectorate in April 2018 as a Procurement/Supply Chain Manager. (Doc. 20-1 at 3–4.) Goss achieved cost savings for his employer in accordance with his role, but he was not rewarded for his work. (*Id.* at 4–7.) Instead, after receiving positive feedback on his job performance in late 2018, Goss was fired in early 2019. (*Id.* at 7–8.) Goss notes that his termination came a few weeks after he told HR that his "race was a factor in the lack of support and guidance he received from management." (*Id.*) In direct contrast to his situation, Goss describes his employer's approach to a "similarly situated co-worker." (*Id.* at 4.) Christina Arias was a non-black Procurement Manager who also worked for Defendants. (*Id.* at 4.) Goss says that even though he routinely found savings that Arias overlooked, his employer gave his work to Arias to present as her own. (*Id.* at 7.) Goss adds that Arias received perks and opportunities that he did not, including an office, a coveted position on a steering committee, and continued employment. (*Id.* at 5–7.) As a result, Goss concludes that he was fired because of his race and in retaliation for complaining about racial discrimination. (*Id.*)

Goss also describes Bureau Veritas's corporate structure. Goss alleges that Holdings acquired Inspectorate and changed the entity's name to Bureau Veritas Commodities and Trade,

3

Inc. (*Id.* at 3.) Goss says that the companies were reorganized under the general Bureau Veritas umbrella in mid-December 2018, whereupon Holdings became his employer. (*Id.* at 4.)

## II. STANDARD OF REVIEW

The deadline for Goss to amend his complaint as a matter of course has expired, so he can amend only with the consent of the opposing party (which he has not received) or the Court's leave. FED. R. CIV. P. 15(a)(2). Because a district court should "freely give leave when justice so requires," *id.*, the Court "must have a 'substantial reason' to deny [Goss's] request for leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)). Substantial reasons include " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility[.]' " *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (emphasis added) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996)).

In the Fifth Circuit, an amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000). Thus, to determine futility, the Court must ask whether the amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling," the plaintiff cannot surmount the 12(b)(6) hurdle and the amendment is considered futile. *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

### III.   ANALYSIS

Defendants raise three arguments as to why the Court should deny Goss leave to amend: (1) Goss's Title VII claim is time-barred; (2) Goss's has no claims against the Inspectorate and Commodities entities because they did not commit the complained-of acts; and (3) Goss does not make out a plausible claim under section 1981. The Court agrees that Goss's Title VII claim is time-barred but concludes that the other arguments come up short.

   *A.   Goss's Title VII Claim Is Time-Barred*

Under Title VII, a claimant has ninety days to file suit after receiving a right-to-sue letter from the EEOC. *Nilsen v. City of Moss Point*, 674 F.2d 379, 381 (5th Cir. 1982). This requirement "is strictly construed." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). If the plaintiff fails to allege the date of receipt, the Court can "presume[] various receipt dates ranging from three to seven days after the letter was mailed." *Id.* Here, the EEOC issued Goss's right-to-sue letter on December 9, 2020. (Doc. 27-1 at 2.) Goss did not allege the date of receipt, so the Court can presume receipt between December 12, 2020, and December 16, 2020. Nevertheless, Goss did not seek to add his Title VII claim until December 1, 2021. (Doc. 20.) Because that date falls more than ninety days after Goss presumptively received his EEOC letter, Goss's Title VII claim must be dismissed as untimely unless it relates back.

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). An amendment that seeks to add or change a claim relates back when the new claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B). An amendment that seeks to change a party

5

or the naming of a party relates back if the Rule 15(c)(1)(B) test is satisfied and: "if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c). Goss's Title VII claim satisfies most of Rule 15(c)(1)(C), but it is ultimately doomed by a lack of timely notice.

1. <u>Goss's claim arises out of the same conduct, transaction, or occurrence</u>

Goss's Title VII claim does arise out of the same conduct, transaction, or occurrence as that he attempted to set out in his Original Petition. Goss originally alleged a violation of Chapter 21 of the Texas Labor Code. (Doc. 1-3 at 3.) Chapter 21 and the Texas Commission on Human Rights Act ("TCHRA") are interchangeable terms. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010). "The TCHRA was 'modeled after federal civil rights law' and has as an express purpose to provide for the execution of the policies of Title VII." *Aforigho v. Tape Prod. Co.*, 334 F.R.D. 86, 94 (S.D. Tex. 2020) (quoting *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)). Thus, the Fifth Circuit has acknowledged that "the law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). As a result, Goss's Title VII claim arises from the same conduct, transaction, or occurrence as the Chapter 21 claim that Goss attempted to set out in his Original Petition; the Court can fairly conclude that the requirements of Rule 15(c)(1)(B) are met.

2. <u>Goss made a mistake concerning the proper party's identity</u>

In *Krupski*, the Supreme Court said: "The question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of . . . the proper defendant, but

whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." 560 U.S. at 548. Thus, "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* Nevertheless, Defendants note that "a conscious choice to sue one party over another is not a mistake and does not constitute the basis for relation back." *Mitts v. Sikorsky Aircraft Corp.*, 2012 WL 12893657, at *4 (S.D. Tex. June 26, 2012) (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010)). Defendants therefore argue that Goss's decision to file suit against BVNA was not a mistake, but a conscious decision to pursue a claim against that entity alone. (Doc. 27 at 6–7.)

This case, however, is not like *Mitts*. In *Mitts*, the plaintiff sought to add an unrelated party without any indication that there was a mistake. *Id.* at *5. As a result, the court concluded that the plaintiff had consciously elected to exclude the late-added entity. *Id.* Here, by contrast, Goss seeks to substitute entities from different branches of the same corporate tree. That distinction indicates that Goss simply made a mistake in his original filing. There is no indication that he strategically elected to sue BVNA (which he improperly named) over the other entities. The Court therefore concludes that Goss did make a mistake concerning the proper party's identity.

3. <u>The proper parties did not receive notice of the action such that they should have known of the mistake within the Rule 4(m) period</u>

The new entities' strongest argument is that they did not receive notice of the action such that they should have known of the mistake and would not be prejudiced in defending against the action within the Rule 4(m) period. On this point, the Court agrees.

The predicate question here is when the new entities received notice. The Fifth Circuit "will infer notice if there is an identity of interest between the original defendant and the defendant

7

sought to be added or substituted." *Jacobsen*, 133 F.3d at 320. " 'Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.' " *Id.* (quoting *Kirk v. Cronvich*, 629 F.2d 404, 407–08 (5th Cir. 1980)). "[N]otice may be imputed to the new party through shared counsel." *Id.* (citing *Barkins v. International Inns, Inc.*, 825 F.2d 905, 907 (5th Cir. 1987)). Here, the new entities appear to be part of the same corporate structure as BNVA. The entities also share counsel in this matter. In addition, if the new entities were truly separate, BVNA would not seek to avoid an amendment that excludes it from the case. But the Response that contests Goss's Motion for Leave comes from BVNA. (Doc. 27 at 1.) Consequently, the Court can infer an identity of interest between the parties such that the new entities had notice of the proceedings whenever BVNA had notice of them.

The next question is whether the entities had notice "within the period provided by Rule 4(m) for serving the summons and complaint[.]" FED. R. CIV. P. 15(c)(1)(C). Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The new entities, then, must have had notice of the action within ninety days of the filing of Goss's original complaint for the amendment to relate back under Rule 15(c)(1)(C). *See e.g.*, *Salazar v. Zapata County, Texas*, 2019 WL 765146, at *3 (S.D. Tex. Feb. 21, 2019). Goss filed his Original Petition in state court on December 15, 2020. Thus, a plain application of the ninety-day period from Rule 4(m) would mean that the new entities must have had notice of Goss's claim by March 15, 2021. But Goss did not serve any of the entities until July 13, 2021. Thus, even though the new entities share an identity of interest with BVNA, they did not receive timely notice.

8

Admittedly, however, some complexities cloud these procedural waters. Generally, "[i]n removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court." 4B WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1137 (4th ed.). Goss might therefore argue that the ninety-day period under Rule 4(m) reset upon removal. But this "resetting" principle is derived from 28 U.S.C. § 1448, which states:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Thus, additional time to complete service is only warranted after removal under Rule 4(m) "if, prior to the case's removal, service of process has not been perfected prior to removal[.]" *Fields v. SDH Servs. E., LLC*, 2019 WL 1098369, at *3 (S.D. Tex. Mar. 7, 2019); *see Copeland v. EMC Mortg. LLC*, 2016 WL 7634455, at *6 (S.D. Miss. Dec. 21, 2016) ("Assuming that the . . . Defendants had not been properly served at the time of removal, the deadline for serving process on them would have been 90 days after the date this case was removed."). Here, Goss perfected service on BVNA prior to removal. It therefore makes little sense to restart the Rule 4(m) period. To wit, if the period restarted, Goss would somehow have completed service before the Rule 4(m) window even opened. That logical impossibility militates against such an interpretation. Consequently, the Court will not extend the ninety-day period beyond March 15, 2021.

"Notice is the critical element involved in Rule 15(c) determinations." *Williams v. United States,* 405 F.2d 234, 236 (5th Cir. 1968). Here, Goss filed suit on December 15, 2020. But neither BVNA nor the new entities had notice of Goss's suit until July 13, 2021. As a result, the new entities did not "receive[] . . . notice of the action that [they] will not be prejudiced in defending on the merits . . . within the [ninety-day] period provided by Rule 4(m) for serving the summons

9

and complaint[.]" Goss has the burden of proof on the issue of relation back. *Dodson v. Hillcrest Sec. Corp.*, 95 F.3d 52 (5th Cir. 1996). But Goss did not address the issue in his Motion, nor did he file a Reply. Thus, the Court concludes that Goss's proposed Title VII claim against the new entities does not relate back to his Original Petition. And because Goss filed his Title VII claim against the new entities outside the ninety-day window following his EEOC letter, his Title VII claim against the new entities is time-barred and futile. The Court therefore **DENIES** Goss's request to amend his complaint to add a new Title VII claim against the new defendant entities.[1]

### B. Goss Alleges that Commodities and Inspectorate Made Some of the Decisions at Issue

Next, Defendants argue that Goss "concedes" that Commodities, and Inspectorate did not make the decisions upon which his claims are based. (Doc. 27 at 8.) Thus, Defendants contend that Goss cannot bring claims against Commodities or Inspectorate. The Court disagrees.

---

[1] At the hearing, Defendants represented that Goss's Title VII claim could not relate back because the original state-law claims were time-barred. In support, Defendants cited *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944 (5th Cir. 2014). In that case, the plaintiff sued in state court alleging racial discrimination and retaliation in violation of Chapter 21. *Id.* at 945. Several months later, the plaintiff filed an amended petition that added claims under Title VII and section 1981. *Id.* The defendant then removed the case to federal court and moved to dismiss based on the statute of limitations. *Id.* Ultimately, the Fifth Circuit held that the district court was correct to dismiss the plaintiff's federal law claims and deny relation back. *Id.* Extrapolating from Rule 81(c)(1), the Fifth Circuit noted that the Federal Rules apply to an action after it has been removed from state court. *Id.* at 946. The Court therefore applied Texas law on relation back to determine whether the plaintiff's amended petition, which was filed in state court, related back to his original petition. *Id.* at 947. Texas law provided that the amended petition did not relate back because the plaintiff's original claims were time-barred when filed. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.068). Consequently, the Fifth Circuit held that the new claims did not relate back. *Id.* Here, by contrast, Goss filed his Title VII claim *after* the case was removed to federal court. The Federal Rules govern whether new claims asserted for the first time after removal relate back. *See* FED. R. CIV. P. 81(c)(1). And under the Federal Rules in the Fifth Circuit, "the relation-back doctrine is available even when the claims asserted in the original pleading were untimely." *Aforigho*, 334 F.R.D. 86, 95 (S.D. Tex. 2020) (citing *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342–43, n.3 (5th Cir. 2005)). The fact that Goss's Original Petition may have asserted time-barred claims, then, has no bearing on the Court's relation-back analysis here.

To support this argument, Defendants cite *Tipton v. Northrup Grumman Corp.*, 242 F. App'x 187 (5th Cir. 2007). There, the Fifth Circuit affirmed summary judgment for a parent corporation in an employment discrimination case on the grounds that the parent was not the employer of its subsidiary's employees. *See id.* at 189 ("The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees.") Still, "[i]n civil rights actions, 'superficially distinct enterprises may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.' " *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The Fifth Circuit uses the four-part test from *Trevino* to determine whether a parent corporation and its subsidiary are a "single employer" in civil rights cases. *Tipton*, 242 F. App'x at 190. This test "examines: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (citing *Trevino*, 701 F.2d at 404). The second factor is the most important; it raises the critical question: " 'what entity made the final decisions regarding employment matters related to the person[s] claiming discrimination?' " *Id.* (quoting *Schweitzer*, 104 F.3d at 764).

Contrary to Defendants' assertions, Inspectorate and Commodities plausibly made some of the decisions upon which Goss's claims are based. Goss alleges that if he "was not Black, he would not have been subjected to disparate treatment[.]" (Doc. 20-1 at 10.) Goss then alleges that he was disparately treated based on his race when he was forced to sit in the lobby for the first two weeks of his employment, never received an office, was not rewarded for his efforts to save money, saw his work given to Arias to exploit, and failed to get "adequate support from management to succeed in his role." (*Id.* at 4–7.) Several of these incidents occurred before Goss's employment allegedly transferred to Holdings. (*Id.* at 4.) Thus, Goss plausibly alleges that Inspectorate and

11

Commodities were responsible for some of the decisions at issue. There is therefore no need to get into *Tipton*'s imputation analysis. As a result, the Court rejects this argument as a basis for denying Goss's Motion.

### C. Goss's Section 1981 Claim Is Plausible

Finally, Defendants argue that Goss fails to plausibly allege a claim under section 1981. The Court disagrees.

The Fifth Circuit analyzes employment law claims under section 1981 using the Title VII framework. *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017). "Under Title VII, an employer cannot 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]' " *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing 42 U.S.C. § 2000e–2(a)(1)). At the pleading stage, however, the plaintiff need not make out a prima facie case of race discrimination. *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016). Instead, the plaintiff must simply plead facts that "permit the court to plausibly infer that, 'but for race, [he] would not have suffered the loss of a legally protected right.' " *Hoyt v. Am. Nat'l Ins. Co.*, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021) (quoting *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). Allegations showing that a similarly situated individual outside of the plaintiff's protected group was treated more favorably can " 'create the necessary inference [of discrimination] and set the predicate for establishing the section 1981 claim.' " *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quoting *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished)).

Defendants contend that Goss's section 1981 claims are not plausible because Goss was actually terminated for inadequate performance. (Doc. 27 at 11.) Defendants also contend that Arias was not similarly situated to Goss because she had different job responsibilities and a different supervisor. (*Id.*) To support these contentions, Defendants rely on a Declaration submitted by Hilaire Fournier, Holdings' Assistant Chief Financial Officer. But reliance on that declaration is not proper on a motion for leave to file an amended complaint. After all, the proper standard for evaluating an amended complaint is whether it alleges a plausible claim for relief. *Stripling*, 234 F.3d at 873. And plausibility simply requires that the complaint itself "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court therefore refuses to consider Defendants' extrinsic evidence on this point.

Evaluating only the allegations in Goss's proposed amendment, the Court concludes that Goss plausibly indicates that his race was a but-for cause of his disparate treatment. Goss's strongest allegations contrast his situation with that of Christina Arias, who is not black. Goss alleges that he was hired as a Procurement/Supply Chain Manager, while Arias served as a Procurement Manager. (Doc. 20-1 at 4.) Goss never received an office—and was told by BV that offices were only given to C-Suite employees—but Arias received an office. (*Id.* at 5.) Goss alleges that he achieved substantial cost-savings for his employer—some of which were overlooked by Arias—but that Arias was given the opportunity to present his findings. (*Id.* at 7.) Goss also alleges that he sought placement on the steering committee of a new Enterprise Resource Program, but that Arias was placed on the committee even though management "stressed a lack of confidence in [her] performance as Procurement [M]anager." (*Id.* at 4, 6.) Finally, Goss alleges that he was told by Andrew Mynn in November of 2018 that he was performing well, which conflicts with

13

Defendants' insistence that Goss was fired for poor performance. (*Id.* at 7–8.) Taken together, these factual allegations give rise to the plausible inference that Goss's employer treated a similarly situated employee outside of his protected group more favorably.[2] That, in turn, indicates that Goss plausibly makes out a section 1981 claim for race discrimination.

Still, Defendants argue that Goss's claim is not plausible because of the "same actor inference." Typically, when "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 321 n.3 (5th Cir. 1997). "The inference is not unassailable, however, and a plaintiff may overcome it by presenting evidence of 'sufficiently egregious' facts." *Curry v. Telect, Inc.*, 2009 WL 1659344, at *4 (N.D. Tex. June 15, 2009) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). Here, Fournier hired and fired Goss, so Defendants conclude that they are entitled to the same actor inference. Wrong. The same actor inference requires the plaintiff to provide "evidence of sufficiently egregious facts." It is entirely inconsistent with the plausibility standard to require the plaintiff to present countervailing evidence at the 12(b)(6) stage. *See Marosan v. Trocaire College*, 2015 WL 1461665, at *20 (W.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 1462109 (W.D.N.Y. Mar. 30, 2015) (reasoning that "because the same-actor inference requires the weighing of facts, its application on a motion to dismiss is improper"); *see George v. Roush & Yates Racing Engines, LLC*, 2012 WL 3542633, at *5 (W.D.N.C. Aug. 16, 2012) (concluding that it is inappropriate to apply the same actor inference in an ADA case on a motion to dismiss because "[a]t the pleading stage, there is no exchange of burdens of proof, as contemplated by *McDonnell Douglas*"). And Defendants do

---

[2] Without Fournier's Declaration, there is nothing at the 12(b)(6) stage that seriously undermines Goss's allegation that Arias was similarly situated.

not direct the Court to a single case where another court has deployed the same actor inference on a motion to dismiss. The Court therefore holds that the same actor inference does not apply to a motion to dismiss (or a motion for leave where the plausibility of an amended complaint is at issue); Defendants' argument for the same actor inference falls short.

Overall, then, the Court reads Goss's proposed Second Amended Complaint to make out a plausible claim for racial discrimination against the new entities under section 1981. The Court therefore **GRANTS** Goss's request to amend his complaint to replace his state law claims against BVNA with a section 1981 claim against Holdings, Inspectorate, and Commodities.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Goss leave to file his Second Amended Complaint, which substitutes Holdings, Commodities, and Inspectorate for BVNA and brings a section 1981 claim against those entities. The Court, however, **DENIES** Goss leave to add his Title VII claim against those entities.

Based on this Order, Goss's First Amended Complaint is now of no legal effect. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The Court therefore also **DENIES** Defendant's Motion to Dismiss (Doc. 4) as **MOOT**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 14th day of February, 2022.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE